UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY A. ALBARRAN,

    Plaintiff,

v.                                                Case No. 1:08-cv-1020
                                                Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on March 3, 1959 (AR 116). She completed the 11th grade (AR 113).[1] Plaintiff has filed three previous applications seeking DIB and SSI.[2] The present action arises from a fourth application filed on January 7, 2003, alleging a disability commencing on July 21, 1999 (AR 589). After denial of her claims, a hearing was held on January 4, 2005 (AR 589). The ALJ issued an unfavorable decision on April 4, 2005, holding "in pertinent part, that the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] First, on November 30, 1993, plaintiff filed applications for DIB and SSI (AR 589). The applications were denied initially and plaintiff did not request an appeal (AR 589). Second, plaintiff filed applications for DIB and SSI on August 18, 1997 (AR 589). These applications were denied initially and on reconsideration (AR 589). Plaintiff requested a hearing, but the request was dismissed when she failed to appear for the hearing on April 21, 1998 (AR 589). Third, plaintiff filed applications for DIB and SSI on November 16, 2000 (AR 589). These applications were denied initially and by an administrative law judge on August 8, 2002 (AR 589). Plaintiff did not request an appeal of the 2002 adverse decision (AR 589).

claimant retained the residual functional capacity to perform a wide range of work at the light exertional level with nonexertional limitations that did not significantly reduce her occupational base to the extent that competitive employment is precluded" (AR 589). The Appeals Council considered new evidence submitted by plaintiff's new attorney, James Rinck, but concluded that this evidence did not provide a basis for changing the decision (AR 590).

Plaintiff filed an action seeking judicial review in this court. *See Albarran v. Commissioner*, No. 1:06-cv-463 (W.D. Mich.). In a Report and Recommendation dated July 11, 2007, the undersigned concluded in pertinent part that "factual issues exist in this case as to whether (1) plaintiff met the diagnostic definition of mental retardation and (2) the accuracy of the IQ test administered by Dr. King. . . Accordingly, the Commissioner [ ] should re-evaluate the record to determine whether plaintiff met the requirement of mental retardation under Listing 12.05C." *Id.* (Report and Recommendation, p. 8) (docket no. 13). On August 8, 2007, the court adopted the Report and Recommendation, and ordered that the Commissioner's decision be reversed and remanded pursuant sentence four of 42 U.S.C. § 405(g) "for a re-evaluation of Plaintiff's claim consistent with the Report and Recommendation." *Id*. (Order Adopting Report and Recommendation) (docket no. 14).

The Appeals Council vacated the April 4, 2005 hearing decision and remanded the case to an ALJ for resolution of issues consistent with the Court's August 8, 2007 Order (AR 590). The ALJ held a hearing on March 13, 2008 in Grand Rapids, Michigan (AR 590). The specific issue before the ALJ was whether plaintiff satisfied the medical-severity requirements of Listing 12.05(C) (AR 590). In a decision entered March 20, 2008, the ALJ determined that plaintiff was not under a disability, as defined in the Social Act, as amended, at any time from July 21, 1999 through the

date of the decision (AR 589-602). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since July 21, 1999, the alleged onset of disability (AR 592). Second, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; mild mental retardation; major depression; and a generalized anxiety disorder (AR 592-93). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 596-98). The ALJ decided at the fourth step that plaintiff had:

> the residual functional capacity to preform work at the light exertional level, as defined in the Dictionary of Occupational Titles, not requiring more than occasional climbing of ladders or stairs, bending, twisting, kneeling, stooping or crawling; and is limited to the performance of simple, repetitive and routine tasks.

(AR 598). Given these restrictions, the ALJ found that plaintiff could perform her past relevant work as a production inspector, general packager and laborer (AR 600).

Although the ALJ found that plaintiff was not disabled at step four, he continued the sequential evaluation to step five, where he determined that plaintiff could perform 16,000 jobs in the regional economy (Michigan) including: assembler (3,000 jobs); inspector (3,000 jobs); packager (2,500 jobs); custodian (4,500 jobs); and general clerk (3,000 jobs) (AR 601). Accordingly, the ALJ determined that plaintiff was not under a disability and entered a decision denying benefits (AR 602).

## III. ANALYSIS

Plaintiff raises one issue for review:

**The ALJ committed reversible error again in this case by failing to find that the plaintiff met Listing 12.05(C).**

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity than the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this

difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* Consequently, when a claimant successfully demonstrates that he meets a listed impairment, the Commissioner will find the claimant disabled without considering his age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Listing 12.05 provides in pertinent part as follows:

Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.05.

A Social Security claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria . . ." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (quoting 20 C.F.R. Pt. 404, Subpt. P, Appl 1 § 12.00(A)) (brackets in original). A claimant "must make three showings to satisfy Listing 12.05(C): (1) he experiences 'significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period' (i.e., the diagnostic description); (2) he has a 'valid verbal, performance, or full scale IQ of 60 through 70'; and (3) he suffers from 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *West v. Commissioner*

7

*Social Security Administration*, 240 Fed. Appx. 692, 697-698 (6th Cir. 2007), citing 20 CFR Pt. 404, Subpt. P, App. 1, Listing 12.05.

The record reflects that plaintiff has met the requirement in 12.05C of "[a] valid verbal, performance, or full scale IQ of 60 through 70." In January 2005, plaintiff's testing revealed a full scale IQ of 69 (AR 593). More recently, in January 2008, plaintiff's testing revealed a verbal IQ of 66, a performance IQ of 65, and a full scale IQ of 63 (AR 594).

However, the ALJ determined that plaintiff failed to meet the threshold requirements of the listing. Specifically, plaintiff failed to present definitive evidence of deficits in adaptive behavior prior to attainment of age 22:

> The threshold requirements of listing 12.05 mandates deficits in adaptive behavior initially manifested during the developmental period; *and* supporting evidence of an onset prior to attainment of age 22.
>
> Testimony established that the claimant was not involved in special education services. Records obtained from high school showed that while in ninth grade, the claimant received D's in the regular education classroom. In the 10th grade, the claimant received no grades lower than a C- in the regular classroom. While in the 11th grade, the claimant's lowest grade was a C-; and she received an A and several B's. The claimant said that she had trouble with algebra and geometry in high school. She had speech therapy as a younger child. The claimant reported that she ran away from home one time; which resulted in foster care placement. Moreover, elementary school intelligence testing in 1969 showed an intelligence quotient of 71. The preceding does not establish that the claimant had deficits in adaptive behavior prior to age 22.
>
> It is also significant that the most recent psychological/intellectual assessment indicates no functional limitation in the ability to understand, remember and carry out simple directives. It is reiterated that it was felt that the claimant would have moderate limitation in her ability to understand, remember and carry out complex instructions; and make judgments on complex work-related decisions. Indeed, testing on the Wide Range Achievement Test-3 established that she could read at a high school level; spell at the sixth grade level; and perform arithmetic computations at the fifth grade level. The claimant had no difficulty caring for her daughter from a high-school pregnancy. Furthermore, the claimant conceded that she could understand how to do her work in the capacity of assembler.

> In summary, the evidence fails to support a conclusion that the claimant fulfills the threshold requirements of listing 12.05 as [sic] pertains to definitive evidence of deficits in adaptive behavior prior to attainment of age 22.

(AR 597) (internal citations omitted).

The ALJ's determination that plaintiff failed to present definitive evidence of deficits in adaptive functioning as required by Listing 12.05C is supported by substantial evidence. For purposes of this listing, "[a]daptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West*, 240 Fed. Appx. at 698, citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993).

> [B]y definition, mental retardation has its onset during a person's developmental period. Mental retardation, furthermore, results in deficits or impairments in adaptive functioning, that is to say, the person's effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group.

*Heller*, 509 U.S. at 329 (internal quotation marks omitted).

Plaintiff was enrolled in regular classes as opposed to special education classes. While plaintiff's grade indicate that she was a fair to poor student, she did earn an A and some B's. Plaintiff testified that she got along "[f]airly good" with other students in high school and played "a little volleyball" (AR 922-23). She was placed in foster care during high school because she was disobedient and ran away once (AR 940). Plaintiff dropped out of school at age 18 when she became pregnant (AR 923). At that time, plaintiff lived with her father, who provided some financial support, i.e., a "[p]lace to live" and help buying the necessities for the baby (AR 924). Plaintiff also testified that she was able to take care of her daughter (AR 924). The record indicates that plaintiff possessed a degree of personal independence, social responsibility and daily living skills expected of her age group. *See generally*, *Heller*, 509 U.S. at 329. The question, of course,

is not whether the court would have arrived at the same conclusion, but whether there is substantial evidence to underpine the decision reached by the ALJ. Under these circumstances, substantial evidence supports the ALJ's decision that plaintiff did not establish deficits in adaptive functioning before age 22 necessary to meet the requirements of Listing 12.05C.

### IV. Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be affirmed.


Dated: January 19, 2010                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).